**FILED**

**MAR 1 5 2010**

Clerk, U.S. District and
Bankruptcy Courts

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILDEARTH GUARDIANS<br>312 Montezuma Avenue<br>Santa Fe, NM 87501 | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case: 1:10-cv-00421<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 3/15/2010<br>Description: Admn Agency Review |
| vs. | ) ) | |
| KEN SALAZAR, Secretary,<br>United States Department of the Interior,<br>1849 C Street, N.W.<br>Washington, D.C. 20240 | ) ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

## I.   INTRODUCTION

1.   Defendant, Ken Salazar, Secretary of the United States Department of the Interior ("Secretary"), through the United States Fish and Wildlife Service ("FWS"), the agency to which the Secretary has delegated his responsibilities in this case, has failed to comply with his mandatory duty to determine within one year of receiving Plaintiff's July 24, 2007 Petition ("Petition") whether three rare freshwater springsnails—the Longitudinal gland pyrg (*Pyrgulopsis anguina*), Hamlin Valley pyrg (*Pyrgulopsis hamlinensis*), and Sub-globose snake pyrg (*Pyrgulopsis saxatilis*) (collectively "the Pyrgs")—warrant listing under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.  Plaintiff brings this suit in order to force the Secretary to comply with his statutory duty.

## II.    PARTIES

### A.    Plaintiff

2.      Plaintiff, WildEarth Guardians, suing on behalf of itself and its adversely affected members, is a non-profit environmental organization based in Santa Fe, New Mexico.  WildEarth Guardians was created on January 28, 2008 by the merger of three organizations: Forest Guardians, Sinapu, and Sagebrush Sea Campaign.  WildEarth Guardians has an active endangered species protection campaign that is national in scope.  As part of this campaign, WildEarth Guardians, through its predecessor-in-interest Forest Guardians, petitioned the FWS on July 24, 2007 to list the Pyrgs as threatened or endangered species under the ESA.  WildEarth Guardians engaged in prior litigation with Dick Kempthorne, the former Secretary of the United States Department of the Interior, in order to force the Secretary to act on the Petition as required by 16 U.S.C. § 1533(b)(3)(A), a different statutory deadline than the one at issue in this case. WildEarth Guardians is harmed by the Secretary's failure to make the required finding in a timely manner because it devoted significant time and resources to: (1) prepare the Petition, (2) force the Secretary through litigation to comply with Section 1533(b)(3)(A), and (3) prepare comments in response to the Secretary's request for information in order to help him review the status of the Pyrgs pursuant to Section 1533(b)(3)(A).  WildEarth Guardians is further harmed by the Secretary's failure to make the required finding because the Secretary is denying it information concerning the Secretary's opinion as to the biological status of the Pyrgs.  This information, to which WildEarth Guardians has a legal right, would be useful to WildEarth Guardians in prioritizing its conservation efforts and in furthering its mission to save imperiled species.

3.      WildEarth Guardians has over 4,500 members.  Members of WildEarth Guardians use and enjoy the Pyrgs and their current or potential habitat for wildlife viewing, recreational, aesthetic, and scientific activities, and will continue to do so in the future.  Members of WildEarth Guardians are particularly concerned with the conservation of the Pyrgs and the ecosystem on which they depend for survival, and have specific and concrete future plans to visit and enjoy the Pyrgs and their current or potential habitat.  Members of WildEarth Guardians are harmed by the Secretary's failure to respond to the Petition as required by the ESA because activities permitted in the absence of listing are contributing to the extinction of the Pyrgs and, absent listing, the Secretary will not take the steps necessary to ensure the Pyrgs' recovery.

4.      WildEarth Guardians and its members have a substantial interest in this matter and are adversely affected by the Secretary's failure to comply with the ESA's requirement that the Secretary make a determination to list the Pyrgs as threatened or endangered within one year of the Petition.  The requested relief will redress WildEarth Guardians' and its members' injuries.

**B.      Defendant**

5.      Defendant Salazar, as Secretary of the United States Department of the Interior, has ultimate responsibility for implementing the ESA as it pertains to the Pyrgs.  Secretary Salazar is sued in his official capacity.  In this case, Secretary Salazar has delegated his responsibilities under the ESA to the FWS, an agency within the United States Department of the Interior.

**III.   JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 16 U.S.C. § 1540(g)(1)(C) (ESA citizen suit provision).

3

7.     This Court has authority to grant WildEarth Guardians' requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief).

8.     Pursuant to 16 U.S.C. § 1540(g)(2)(C), WildEarth Guardians provided written notice to the Secretary more than 60 days ago, informing him that he was in violation of 16 U.S.C. § 1533(b)(3)(B), and of WildEarth Guardians' intent to sue if the violation was not promptly remedied.

9.     An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201 because the Secretary has not remedied his violation of the ESA by making the overdue finding required by 16 U.S.C. § 1533(b)(3)(B).

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A). The Secretary officially resides in this judicial district.

## IV.    STATUTORY FRAMEWORK AND FACTS GIVING RISE TO PLAINTIFF'S CLAIM FOR RELIEF

### A.    The Statutory and Regulatory Framework Underlying Plaintiff's Claim

11.    Congress enacted the ESA to provide both "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "a program for the conservation of such endangered and threatened species." 16 U.S.C. § 1531(b).

12.    The Secretary, acting through the FWS, has primary responsibility for implementing the ESA when it comes to non-marine species. The Pyrgs are not marine species.

13.    To fulfill its purpose, the ESA requires the Secretary to "determine whether any species is an endangered species or a threatened species." *Id.* § 1533(a)(1). An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened species" is a species "which is likely to become an

4

endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

14.     The ESA requires the Secretary to publish "a list of all species determined . . . to be endangered species and a list of all species determined . . . to be threatened species." *Id.* § 1533(c)(1).  This listing process is the critical first step in the ESA's system of species protection and recovery.

15.     In determining whether to list a particular species as endangered or threatened, the ESA requires the Secretary to consider the following factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;
(B) overutilization for commercial, recreational, scientific, or educational purposes;
(C) disease or predation;
(D) the inadequacy of existing regulatory mechanisms; or
(E) other natural or manmade factors affecting its continued existence.

*Id.* § 1533(a)(1).  The existence of any one factor may require the Secretary to list the species as endangered or threatened.  The Secretary's determination required by Section 1533(a)(1) is to be made "solely on the basis of the best scientific and commercial data available to him." *Id.* § 1533(b)(1)(A).

16.     If the Secretary determines that a particular species is endangered or threatened, the Secretary must, concurrently with making that determination, "designate any habitat of such species which is then considered to be critical habitat." *Id.* § 1533(a)(3)(A)(i).

17.     Pursuant to 16 U.S.C. § 1533(b)(3), any interested person may petition the Secretary to list a species as endangered or threatened.

18.     Upon receiving a petition to list a species as endangered or threatened, the ESA requires the Secretary to make an initial finding, commonly known as a "90-day finding." Specifically, "[t]o the maximum extent practicable, within 90 days after receiving the petition . .

5

., the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). The ESA's implementing regulations define "substantial information" as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b).

19.    If the Secretary makes a positive 90-day finding, the ESA requires the Secretary to publish the finding in the Federal Register and to "promptly commence a review of the status of the species concerned." 16 U.S.C. § 1533(b)(3)(A).

20.    Upon a positive 90-day finding, 16 U.S.C. § 1533(b)(3)(B) requires the Secretary to make one of three additional findings within twelve months of receiving the petition: (1) the petitioned action is warranted; (2) the petitioned action is not warranted; or (3) the petitioned action is warranted but precluded by other pending proposals to list species of higher priority, provided that the Secretary is making expeditious progress on other listing actions. This is commonly known as a "12-month finding."

21.    If the Secretary makes a 12-month finding that the petitioned action is warranted, 16 U.S.C. § 1533(b)(5) requires the Secretary to publish in the Federal Register a proposed rule to list the species as endangered or threatened.

22.    Within one year of publishing a proposed rule to list a species as endangered or threatened, 16 U.S.C. § 1533(b)(6) requires the Secretary to make a final decision on the proposal, or to extend the proposal for six months in cases of scientific uncertainty.

**B.     The Factual Background Underlying Plaintiff's Claim**

**1.     The Genus *Pyrgulopsis***

23.     Species contained within the genus *Pyrgulopsis* are small (1 to 8 millimeters in shell length) freshwater snails of the Hydrobiidae family, which are generally distinguished by shell and penial characteristics.  Fossil records of the genus extend to the late Miocene era—approximately five to ten million years before the present.

24.     There are at least 131 species within the genus, 80 of which are found within the Sagebrush Sea of the United States.  The Sagebrush Sea is a huge, remote, and relatively rugged region defined as all contiguous areas of currently internal drainage between the Sierra Nevada and Rocky Mountains.

25.     Within the Sagebrush Sea, *Pyrgulopsis* are found in a variety of relatively small, usually fishless, spring-fed water bodies.  The most common habitat for these species is a spring emerging from the ground as a flowing stream, otherwise known as a rheocrene.  Typically, these habitats are very small springs that are often less than 1 meter wide and 1 centimeter deep.  These springs are fragile, unprotected, and prone to extreme degradation due to water development and livestock grazing.  Scientists have noted that at least two species of *Pyrgulopsis* have apparently become extinct within the past three decades.

26.     *Pyrgulopsis* are generally concentrated near spring sources in aquatic vegetation, with their numbers declining as water flows downstream.  They are tightly linked to their particular aquatic habitats due to the fact that they rarely move more than a few meters in a generation and are incapable of crossing dry habitat or wet habitat with inhospitable conditions.  Many *Pyrgulopsis* are endemic to only one spring.

27.    The Sagebrush Sea is divided into several regions, one of which is the Bonneville

Basin located along the Nevada-Utah border.  The Pyrgs at issue in the Complaint are all

endemic to the Snake Valley subregion of the Bonneville Basin, which includes Hamlin Valley

in Utah and Snake Valley straddling the Nevada-Utah border.

## 2.    The Pyrgs at Issue in the Complaint

### a.    Longitudinal gland pyrg (*Pyrgulopsis anguina*)

28.    The Longitudinal gland pyrg has been described as "medium-sized, with sub-

globose to ovate-conic shell.  Penis large; filament and lobe short."  Its shell ranges from 1.7 to

2.4 mm in length.  It is known to occur only in two warm springs (61°F and 63°F respectively) in

Snake Valley.  One of those springs is located in Nevada, and the other is located in Utah.

29.    In Nevada, the Longitudinal gland pyrg is found at Big Springs in White Pine

County.  Big Springs is a shallow, four meter wide rheocrene.  In Utah, the Longitudinal gland

pyrg is found at Clay Spring in northwestern Millard County at an approximate elevation of

5,400 feet above sea level.

### b.    Hamlin Valley pyrg (*Pyrgulopsis hamlinensis*)

30.    The Hamlin Valley pyrg has been described as "small, with narrow-conic shell.

Penis small to medium-sized, filament medium length, lobe short to medium length."  Its shell

ranges from 1.6 to 2.0 mm in length.  The only known habitat of the Hamlin Valley pyrg is at

one small unnamed spring east of White Rock Cabin Springs in western Beaver County, Utah.

The spring, a rheocrene, is at an approximate elevation of 7,160 feet above sea level and has a

temperature of 61°F.

      c.     **Sub-globose snake pyrg (*Pyrgulopsis saxatilis*)**

31.     The Sub-globose snake pyrg has been described as "small, with sub-globose shell. Penis large, filament and lobe short." Its shell is generally 1.0 mm high and 1.4 mm wide. The only known habitat of the Sub-globose snake pyrg is one thermal spring complex in Millard County, Utah in Snake Valley. The complex, known as Warm Springs, consists of a series of large, thermal (81°F) rheocrenes issuing from the side of a hill at approximately 5,080 feet above sea level. As noted by the State of Utah, Department of Natural Resources, "the entire world population of this species exists in only a single series of springs."

      3.     **Threats to the Pyrgs**

      a.     **Threats common to the Pyrgs**

32.     The overriding threat common to the Pyrgs is groundwater withdrawal. Groundwater withdrawal can reduce spring discharge or dry up springs entirely. The U.S. Department of the Interior itself recognizes that the springs comprising the habitat of the Pyrgs "likely are susceptible to ground-water withdrawals." Because the Pyrgs are endemic to only one or two springs, the failure of a single spring due to groundwater withdrawal could lead to the extinction of a species. Even if a spring is not dried up entirely because of groundwater withdrawal, the resulting decrease in flow would likely alter vegetation in and near the springs. This would likely increase erosion and sedimentation, thereby altering water temperature and dissolved oxygen content. This resulting change in habitat would negatively affect the Pyrgs and could lead to their extinction.

33.     The amount of groundwater in Snake Valley (where the Longitudinal gland pyrg and the Sub-globose snake pyrg are endemic) that can be withdrawn each year without decreasing the water table is 25,000 acre-feet-per-year ("afy"). Yet there are at least 65,949 afy

of active records for this valley, and the Southern Nevada Water Authority ("SNWA") holds applications for withdrawal of another 50,679 afy. Thus, even without additional withdrawals from the SNWA, existing groundwater withdrawal in the Snake Valley exceeds the aquifer's capacity and will lead to its eventual depletion.

34.     Proposed groundwater withdrawals in adjacent Spring Valley are likely to affect water resources in Snake Valley. Likewise, the SNWA's proposed groundwater withdrawals in Snake and Spring Valleys are likely to negatively affect spring flows in Hamlin Valley, where the Hamlin Valley pyrg is endemic to only one spring.

35.     Another threat common to the Pyrgs is drought and climate change. The resulting reduced snow pack from these factors could negatively affect the spring flow on which the Pyrgs depend, especially in conjunction with groundwater withdrawal and surface diversions.

      **b.**     **Threats specific to Longitudinal gland pyrg**

36.     The Longitudinal gland pyrg occurs at only two springs, both of which are disturbed by livestock and surface-water diversion. At Clay Spring in Utah, the State of Utah reports that the spring "now issues from an artificial structure, a box, and its flow is mostly diverted to an irrigation ditch. Boxing and diversion of the spring artificially limit usable habitat for this species, reducing available water and suitable substrate habitat." Moreover, the State of Utah recognizes that "[t]rampling of snails by livestock and degradation of critically important water quality through livestock use are threats to population viability of this species."

37.     At Big Springs in Nevada, scientists have reported the habitat to be highly disturbed due to livestock impacts, impacts from a nearby residence, "multiple other human impacts," and the presence of non-native species.

### c.      Threats specific to Hamlin Valley pyrg

38.      The State of Utah reports that the habitat of the Hamlin Valley pyrg is negatively impacted by cattle and a nearby residence. In another report, the State of Utah states: "Given that this species occurs, so far as is known, nowhere else, the known threat of trampling by cattle together with the potential threats suggested by the proximity of a residence must be considered serious threats that jeopardize [the] continued survival of the species."

### d.      Threats specific to Sub-globose snake pyrg

39.      Warm Springs, the thermal spring complex that forms the only known habitat of the Sub-globose snake pyrg, is negatively impacted by recreation. According to the State of Utah, "[t]he extremely limited distribution of [this species], coupled with recreational use of its only known habitat, constitutes a threat to the continued existence of the species." Moreover, in another report, the State of Utah notes that Warm Springs is part-owned as a source for public water and is thus threatened by the possibility of dewatering. Warm Springs has also been invaded by an Asiatic snail of the genus *Melanoides*, which may be displacing the Sub-globose snake pyrg.

### 4.      Plaintiff's Efforts To Protect the Pyrgs

40.      On July 24, 2007, Forest Guardians, WildEarth Guardians' predecessor-in-interest, petitioned the FWS to list a number of species in the FWS's Rocky Mountain Region as endangered or threatened. The FWS received the Petition on July 30, 2007.

41.      The Petition included all full species in the FWS's Rocky Mountain Region not currently listed or considered candidates for listing by the Secretary, but which were considered to be "critically imperiled" or "imperiled" according to the NatureServe database. NatureServe's terminology of "critically imperiled" and "imperiled" are functionally equivalent to the ESA's

definitions of "endangered" and "threatened," and the FWS itself considers NatureServe to be a source for authoritative conservation information. WildEarth Guardians asked the Secretary to incorporate all information in the NatureServe database concerning these species as part of the Petition. The Petition specifically included the three pyrgs at issue in the Complaint—the Longitudinal gland pyrg, Hamlin Valley pyrg, and Sub-globose snake pyrg.

42.     On August 24, 2007, the Secretary acknowledged receipt of the Petition by letter. In his letter, the Secretary stated that he would begin work on the Petition in October 2007.

43.     Pursuant to 16 U.S.C. § 1540(g)(2)(C), WildEarth Guardians sent the Secretary and the FWS a formal 60-day notice letter on November 8, 2007, informing the Secretary and the FWS that they were violating the ESA by failing to make 90-day findings on the species included in the Petition. The Secretary and the FWS received the 60-day notice letter on November 14, 2007.

44.     By letter dated January 10, 2008, the FWS's Rocky Mountain Region responded to WildEarth Guardians' 60-day notice letter, stating that the FWS anticipated making negative 90-day findings on some of the species included in the Petition by September 2008.

45.     On March 19, 2008, WildEarth Guardians filed a complaint in this Court against the Secretary (Case No. 1:08-cv-00472-CKK), alleging, *inter alia*, that the Secretary violated his statutory duty to make a 90-day finding on the Petition.

46.     On February 5, 2009, the FWS published in the Federal Register at 74 Fed. Reg. 6122 negative 90-day findings for a number of species contained in the Petition. The Pyrgs were not included in the February 5, 2009 negative 90-day findings.

47.     On March 13, 2009, WildEarth Guardians and the FWS entered into a stipulated settlement agreement, agreeing that by August 9, 2009 the FWS would make findings for each

species listed in the Petition for which no 90-day finding had yet been made. The total number of species remaining in the Petition for which no 90-day finding had yet been made was 38. The Pyrgs were included in this agreement.

48.     On August 18, 2009, the FWS published in the Federal Register at 74 Fed. Reg. 41649 its overdue 90-day findings on the remaining 38 species. In its publication, the FWS stated: "For 29 of the 38 species, we find that the petition does present substantial scientific or commercial information indicating that listing may be warranted." The Pyrgs were three of the 29 species for which the FWS made positive 90-day findings.

49.     In Table 1 of the FWS's publication, located at 74 Fed. Reg. 41651, the FWS listed the Pyrgs under the heading: "Species for which Substantial Information was Presented." For each of the Pyrgs, the FWS concluded at 74 Fed. Reg. 41661: "[T]he petition presents substantial information to indicate that listing of [the] pyrg may be warranted due to the present or threatened destruction, modification, or curtailment of its habitat or range resulting from spring diversions, livestock trampling, roads, and development; and due to other natural or manmade factors affecting its continued existence resulting from drought and effects of climate change."

50.     Having made a positive 90-day finding that the Petition presented substantial information that the Pyrgs should be listed as endangered or threatened, 16 U.S.C. § 1533(b)(3)(A) required the Secretary to "promptly commence a review of the status of the [Pyrgs]."

51.     Accordingly, the FWS solicited information concerning the Pyrgs' "historical and current status and distribution, their biology and ecology, ongoing conservation measures for the species and their habitats, and threats to the species or their habitats." 74 Fed. Reg. 41649. The

FWS requested that the solicited information be received on or before October 19, 2009. By letter dated October 19, 2009, WildEarth Guardians submitted its comments concerning the Pyrgs via the Federal Rule-Making Portal at http://www.regulations.gov, Docket No. FWS-R6-ES-2008-0131. In its submission, WildEarth Guardians encouraged the Secretary to consider the information contained in the Center for Biological Diversity's February 2009 petition to list 42 species, including the Pyrgs, as threatened or endangered under the ESA. WildEarth Guardians specifically stated that "[t]he information in this petition should inform the FWS's 12 month finding for [the Pyrgs]."

52.     Pursuant to the ESA, the 12-month findings required by 16 U.S.C. § 1533(b)(3)(B) were overdue on August 18, 2009, the date the FWS published its positive 90-day findings for the Pyrgs. On August 26, 2009, WildEarth Guardians sent the Secretary and the FWS via certified mail a formal 60-day notice letter pursuant to 16 U.S.C. § 1540(g)(2)(C), informing the Secretary and the FWS that they were violating the ESA by failing to timely make 12-month findings for the Pyrgs as required by 16 U.S.C. § 1533(b)(3)(B). The letter further informed the Secretary and the FWS that WildEarth Guardians preferred not to file suit to force compliance with the ESA, but would do so if 12-month findings were not issued within the reasonably prompt future.

53.     By letter dated September 24, 2009, the FWS acknowledged that it had received WildEarth Guardians' 60-day notice letter. The FWS suggested that the 12-month findings for the Pyrgs may not be issued until sometime in 2011.

54.     Pursuant to 16 U.S.C. § 1533(b)(3)(B), the Secretary's 12-month findings for the Pyrgs are currently overdue by over 19 months. Extending the 12-month finding into 2011 would make them overdue by at least 29 months, and up to 41 months.

14

## V.    CLAIM FOR RELIEF

55.    Each and every allegation set forth in this Complaint is incorporated herein by reference.

56.    The Secretary has violated 16 U.S.C. § 1533(b)(3)(B) by failing to determine within 12 months after receiving Plaintiff's Petition whether listing the Pyrgs as endangered or threatened is warranted, not warranted, or warranted but precluded by other priorities.

57.    The Secretary has failed to perform a nondiscretionary act or duty within the meaning of the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)(1)(C).

## VI.   PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully requests this Court to:

1.  declare that Defendant has violated the Endangered Species Act;

2.  order the Defendant to complete 12-month findings regarding the listing of the Pyrgs within 30 days;

3.  award Plaintiff its costs and attorneys fees; and

4.  grant Plaintiff such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Todd A. Coberly (D.C. Bar #983105)
COBERLY LAW OFFICE
1322 Paseo de Peralta
Santa Fe, NM  87501
(505) 989-1029
coberlylaw@gmail.com